Fox, Administrator, Appellant, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Respondent.

*October 27—November 14, 1911.*

*Railroads: Killing of watchman at street crossing: Gross negligence: Questions for jury.*

1. In an action for death of a watchman who was run over by the tender of a switch engine backing over the street crossing at which he was stationed, it is *held* that the positive testimony of members of the switching crew on the engine that they kept a vigilant lookout for persons at the crossing and did not see the decedent was not overcome by the physical facts of the situation, and that the trial court properly ruled as matter of law that such crew was not guilty of gross negligence.

2. Omission of the crew on a switch engine to keep a lookout for persons at a street crossing cannot be said to have been gross negligence unless it appears that their conduct was so reckless and wanton as to suggest that they were wholly indifferent to the rights and safety of persons whose peril of being injured they must be held, under the circumstances, to have known.

3. The evidence in this case—showing, among other things, that at the time in question all approach to the crossing from one direction was cut off by a train on another track, and that it was known that it was decedent's duty to guard the crossing and to warn people to keep off—is *held* not to warrant any inference that the crew of the switch engine was apprised of any actual or imminent danger to any one from running the engine over the crossing without keeping a lookout.

Appeal from a judgment of the circuit court for Eau Claire county: James Wickham, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries to Dennis E. Fox, and for his death, alleged to have been caused by the gross negligence of the defendant.

North Dewey street in the city of Eau Claire passes over a hill and runs north and south. In a curve on the hillside four tracks of the defendant cross North Dewey street, running in an east and west direction. An interurban railway track on North Dewey street crosses the tracks of the defend-

ant.    There is a sidewalk along the westerly side of North
Dewey street, and to the west of the sidewalk is a shanty be-
longing to the defendant.    There is a large amount of travel
on this street across the tracks of the defendant, and pedes-
trians cross the street anywhere.    No gates are maintained at
this crossing by the defendant, but by an arrangement be-
tween the defendant and the interurban company a night
watchman at this point is paid his wages by the interurban
company and has shelter in the shanty of the defendant and
receives his lantern and other supplies from the defendant.
For some time prior to February 17, 1908, Dennis E. Fox
had been such night watchman, his hours of work being from
6 o'clock in the evening until 6 o'clock in the morning.

About 7:30 o'clock on the evening of February 17, 1908,
the body of Dennis E. Fox was found lying six or eight feet
west of the sidewalk on the west side of North Dewey street
between the two most southerly of the four tracks of the de-
fendant.    The legs were severed from the body and lay be-
tween the rails of the southernmost track a few feet east of
where the body lay.    On the north rail of this track for a
number of feet east of where the body lay were flesh marks.
Mr. Fox was still breathing when discovered, but was uncon-
scious and died in a few minutes.    Some cinders had been
ground into the skin of the face and there was a bruise upon
the forehead.

It appears from the evidence that about 7 o'clock on the
evening in question the regular passenger train of the defend-
ant left the depot just east of North Dewey street and passed
west over the track on which the body was found.    At 7:15
a freight train, consisting of twenty-four empty logging flat
cars, started from the depot and passed west over the crossing
on the track next north of the one on which the body was
found.    Shortly after the freight train pulled away from the
station, engine No. 28, a switch engine used in the yards, left
a point a little west of the station and passed west over the

crossing on the track on which the body was found. Engine No. 28 passed over the crossing after the engine of the logging train had passed it and while the flat cars were passing it, but before the caboose of this train had passed over the crossing.

The plaintiff, a son of the deceased, was a conductor on an electric interurban car. He testified that at about 7:10 o'clock on the evening in question he passed the time of day with his father at a point just east of the sidewalk on North Dewey street and a few feet south of the defendant's southernmost track. A brakeman riding in the cab of the locomotive of the logging train saw the deceased standing in the road between the street railway tracks and the sidewalk to the south of the track occupied by the logging train. He was unable to state positively whether or not the deceased was standing between the rails of the southernmost track of the defendant or whether or not he stood south of the track. Mr. Fox carried a lighted green lantern in his hand. The brakeman did not observe whether Mr. Fox was facing the logging train. He was unable to see sufficiently distinctly. None of the rest of the crew on the logging train saw Mr. Fox.

On engine No. 28 were the fireman, the engineer, and three brakemen. Their evidence in effect is that the engine backed to its destination; that the tender was before them; that the engineer and fireman were each looking at the track ahead of the tender; that two of the brakemen were also watching the track; that the bell on the engine automatically began to ring when the engine started, and that it continued ringing while the engine was crossing the street; that there was a headlight on the tender, and that the light from it struck the ground about twelve feet in front of the tender; that in coming around the curve the track would be visible from the cab only two or three car lengths in front of the tender; that the posts on the flat cars making up the logging train on the curve made practically a solid obstruction to a view across the cars; that the place where the brakeman testified that he saw the de-

ceased standing was not clearly lighted by the electric lights of the street and was in the shadow of some tall trees; that none of them saw the deceased or his lantern; that they felt no jar from passing over his body; that the tender was ahead of the engine, and that any jar to the tender could not be felt in the engine cab; and that the engine was not going to exceed six miles an hour when it passed over the street.

There was evidence that this engine could have been stopped within fifteen or twenty feet when going two or three miles an hour and within twenty-five feet if going twelve miles an hour. Engine No. 28 had a sloping tank for the special purpose of giving its occupants a clear view of the track over it. Mr. Fox's lantern and cap were found upon the running board of the tender when the engine arrived at Dells switch, a few miles beyond the street crossing.

At the close of the testimony the court directed a verdict for the defendant on the ground that the evidence would not warrant an inference that the defendant's agents and employees had been guilty of gross negligence as alleged in the complaint.

This is an appeal from the judgment entered on the verdict as directed.

*Fred Arnold,* for the appellant.

For the respondent there was a brief by *Jas. B. Sheean* and *Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

SIEBECKER, J. The trial court directed the jury to find that under the evidence adduced no cause of action existed. The complaint charges that the defendant's servants were guilty of gross negligence and that it caused decedent's death. The argument is made that if such servants on the engine, while crossing the street in question, were keeping a lookout for the decedent, they must have seen him in a position of peril of being run down by their engine, and that they must have proceeded deliberately in their course and have run into

him wilfully; or that as they passed over the street crossing occupied by the decedent they wholly omitted to keep a lookout for him, and hence in causing his death were guilty of misconduct which, under the circumstances, was gross negligence. The facts and circumstances shown by the evidence fail to furnish a basis for either inference. A summary of the evidence is given in the foregoing statement. Does the evidence tend to show that the members of the switching crew on the engine must have seen the decedent in a position of peril on the track before the moving engine if they kept a lookout in approaching and passing over the crossing? All the positive testimony of these employees is that they kept a vigilant lookout for persons at the crossing and that they did not see the decedent. It is contended that this evidence is wholly overcome by the admitted and the physical facts of the situation bearing on this question. The facts relied on to support this contention are that the crossing was clearly lighted by electric lights located on the side of the street above the crossing; that the headlight on the tender of the engine necessarily illuminated the place where the decedent stood as they approached him; that he had a signal lantern with a green light plainly visible from the engine; and that there was no obstruction that could prevent the men on the engine from seeing him.

In view of the conditions at the crossing and decedent's presence it does not necessarily follow that he was in view of the men on the engine keeping a lookout for persons on the track as they approached and passed onto the crossing. His position may have been obscured, as is claimed, by tree branches, by the foggy and smoky condition of the atmosphere, and the passing logging train interfering with the light. Again, the decedent may have occupied a place outside of the track and outside of the lighted portion of the street until the engine came into close proximity to him and he may then have moved suddenly into the place of danger.

Nor can it be said that the light of the lantern he had was necessarily visible to the men on the engine.   This may have been extinguished or have been obscured in some way by the position in which he carried it.   Under the circumstances it would be a violent inference to hold that these men, in fact, saw the decedent in a perilous situation, if they were looking as they testify they were.   Nor do the conceded facts and physical conditions of the situation presented necessarily impeach the evidence of the witnesses so as to warrant the conclusion that their evidence is wholly incredible.   We perceive no merit in appellant's contention upon this branch of the case, and consider that the circuit court was justified in holding as matter of law, upon the evidence of the switching crew, that they in fact kept a lookout, as they assert, and that they did not see the decedent, and hence were not guilty of gross negligence in this respect.

The further claim is urged that the jury in the consideration of the evidence would have been justified to conclude that while in the act of running this engine and tender over the crossing the men in charge of the engine omitted to keep a lookout for persons upon this crossing, and that such omission on their part constituted gross negligence in the light of the imminent danger to persons from the engine passing over the crossing.   To predicate gross negligence on this ground it must appear that the passing of this crossing without a lookout being kept, with an engine as here shown, was such reckless and wanton conduct as to suggest that the men on the engine were wholly indifferent as regards the rights and safety of persons whose peril of being injured they must be held, under the circumstances, to have known.

"The danger of inflicting a personal injury upon a person by the conduct of another must be such as to reasonably permit of a belief that such other either contemplated producing it, or, being conscious of the danger that it would occur, imposed that danger upon such person in utter disregard of the consequences, to warrant saying, reasonably, that the circumstances

indicate willingness to perpetrate such injury." *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446; *Wilson v. Chippewa Valley E. R. Co.* 120 Wis. 636, 98 N. W. 536; *Haverlund v. C., St. P., M. & O. R. Co.* 143 Wis. 415, 128 N. W. 273.

The evidence showing the use of this crossing by the public at the time in question is wholly barren of anything tending to show that those running the engine were necessarily informed that they would inflict injuries upon a person in passing over it at the speed and in the manner they traveled. It appears that all approach from the north was intercepted by the logging train, and it was well understood that it was the decedent's duty to guard the crossing and to warn people to keep off it to avoid the danger of passing trains.   These facts refute any claim that the engine crew as they approached the crossing were apprised of any actual and known dangers to persons from this engine.   The inferences from all the facts and circumstances negative any grounds tending to show that there was such imminent danger to any one in passing over the crossing as to make an omission to keep a lookout in driving the engine over it gross negligence.

Upon any theory of the facts it is clear that the plaintiff has failed to adduce evidence tending to establish a cause of action for gross negligence.   The circuit court property dismissed the complaint.

*By the Court.*—Judgment affirmed.