McCABE, Administratrix, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*March 20—April 9, 1914.*

*Street railways: Killing of person at street crossing: Wilful misconduct of motorman: Direction of verdict.*

In an action for the death of a pedestrian who, while attempting to cross the street, stepped immediately in front of a street car and was struck thereby, it is *held,* contrary to findings by the jury, that there was no evidence of gross negligence or wilful misconduct on the part of the motorman and that defendant was entitled to a directed verdict.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

On November 25, 1911, at about 9:30 o'clock in the evening, John W. McCabe, then forty-eight years of age, was

struck and killed by one of the defendant's north-bound cars at the intersection of Third and Wright streets in the city of Milwaukee. The plaintiff bases her right of action upon the wilful misconduct of the defendant's motorman in charge of said car. The jury returned the following verdict:

"(1) While nearing and before reaching the point of collision, did it appear to the motorman that the deceased was unconscious of the approach of the car, and that in the absence of effort on his (the motorman's) part a collision of his car with the deceased was inevitable? A. Yes.

"(2) If you answer the first question 'Yes,' then answer: Did the motorman, when the peril of the deceased became apparent to him, intentionally refrain from making any effort in good faith to slacken the speed of the car? A. Yes.

"(3) Was the death of the deceased caused by wanton and wilful conduct of the motorman indicating conscious disregard of the safety of others? A. Yes.

"(4) If you answer either or both of questions 2 or 3 'Yes,' then answer: Was such conduct the proximate cause of the death of the deceased? A. Yes.

"(5) What sum will reasonably compensate the widow of the deceased for the loss sustained in consequence of his death? A. $7,000."

Motion for directed verdict was made and denied; also the usual motions after verdict were made and denied, and judgment was rendered for the plaintiff on the verdict, from which this appeal was taken.

For the appellant there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *J. D. Shaw.*

For the respondent there was a brief by *Schmitz, Wild & Gross,* and oral argument by *A. J. Schmitz* and *E. J. Gross.*

KERWIN, J. The only question which requires consideration on this appeal is whether the defendant's motorman was guilty of gross negligence. Only two witnesses, Krueger and Steindler, testified as to the accident, and they were produced by the plaintiff.

The charge of wilful misconduct set up in the complaint is

in substance that the deceased proceeded to cross Third street from the east to the west at or near the north crossing of Third street where said street is intersected by Wright street; that at said time a north-bound Third-street car was approaching from the south; that deceased, calculating reasonably from the standpoint of a person of ordinary intelligence circumstanced as deceased, and believing that he had sufficient time, proceeded reasonably to clear the track without interfering with the movement of the approaching car to and past the point where he desired to cross, and assuming that the car was moving at a lawful rate of speed and believing that he had ample time to safely cross said north-bound track before the car would reach him, proceeded to cross from east to west; that when at a point at or near the north crossing between the rails of the north-bound track, the north-bound car, going at an unlawful rate of speed, without lessening its speed as it approached the corner or crossing where deceased was about to cross, without signal of its approach ran upon deceased; that as a result thereof he was instantly killed.

It is established by the evidence that at the time of the accident the car which struck deceased was going at the rate of thirteen miles an hour on the east track on Third street, there being two tracks on the street; that Third street is between forty-eight and fifty feet wide and Wright street about thirty-two feet wide; that Third street runs north and south and Wright street east and west; that there was a center electric light burning in the street at or near the point of accident, and the car which struck deceased was well lighted and the gong rung before the car reached Wright street; that deceased was on his way home, in good health, his hearing and eyesight normal; that he was familiar with the place and situation, having lived near by for about two years; that there were no teams on the street at the time, but many pedestrians were on the street, and the gong rung before the car entered Wright street could be distinctly heard and the lights on the car seen.

The witness Krueger testified that he was on the northwest corner of Third and Wright streets and saw a car hit deceased; that when he first saw deceased he was on the southeast corner of Wright and Third streets, and that he was on the northwest corner diagonally across and noticed deceased coming toward him; that deceased was struck about five feet north of the center of the street and when on the west rail of the east track; that the car ran 100 feet after striking deceased,—the rear end was 100 feet from where deceased was lying. The witness also testified that when he first saw deceased he was coming diagonally across the street toward him. But it seems from other testimony given that he did not see deceased crossing the street diagonally, because he testifies positively that he only saw deceased on the east side of Third street coming up to the corner and did not see him again until he was struck, and testified positively that he did not see deceased come across the street from the southeast corner to the northwest; that he saw him between the rails of the track just before the car struck him, but did not see him get there, and did not see him going across the street before he was struck. He further testified that because the place where he was struck was northwest of the place where he saw him on the sidewalk, he was led to believe that he walked in a northwesterly direction; that when the gong was rung the car was twenty feet south of the south crossing and he did not know where deceased was then; that the last time he saw deceased before the accident he had not gotten up to Wright street,— was ten or fifteen feet south on the east side of Third street.

The witness Steindler testified that he was on the front platform next to the motorman and that the car was going very fast, but afterwards so modified his evidence that it did not conflict with the evidence of Krueger to the effect that the car was going about thirteen miles an hour; that about forty feet south of the south crossing of Wright street the gong was rung, and that he saw deceased at that time; that he was about ten or fifteen feet east of Third street on the north side

of Wright street going west, and when he was just walking towards the curb on Third street and the car was forty feet south of the south crossing of Wright street he hollered "Look out" only once; that he said nothing else and gave the motorman no further intimation as to what he meant by the warning; that at this time the deceased was about eighty feet north and thirty feet east of the car, so that the exclamation "Look out" neither informed the motorman of any danger to deceased nor gave any clue as to the cause of the exclamation. Surely the motorman could not have anticipated from the position of the deceased as testified to by the witness when he hollered "Look out" that deceased would deliberately walk across the street and step immediately in front of the car, as the evidence shows he did. That after the car passed the south crossing it struck deceased when he was in the middle of the track and ran about a car length, and when the car stopped the rear end was about a car length north of the north crossing.

As will be seen from the foregoing statement of the evidence there is little conflict upon the question of negligence. Even if the jury could infer that the deceased was not on the north side of Wright street and walked west to the point where he was struck, but crossed the street diagonally, it would not change the result, because in either case he walked immediately in front of the car and was struck within two seconds, upon the undisputed evidence, after he entered the zone of danger.

There was nothing to apprise the motorman that deceased was likely to enter upon the track. Some claim is made by the learned counsel for respondent to the effect that the warning "Look out" was notice to the motorman of the peril of deceased. We cannot so hold in view of the position of deceased with reference to the car at the time the witness hollered "Look out;" and there is no evidence on this subject except that of Steindler. The exclamation was better calculated to distract the attention of the motorman than to inform

him of any danger to the deceased. There was nothing in the appearance of deceased that would cause the motorman to suspect that he would fail to use the ordinary precautions and keep out of the path of danger. There is no evidence that the motorman either saw the deceased or knew that he would enter upon the track prior to the instant when he stepped immediately in front of the car. There is no evidence whatever of any wilful misconduct on the part of the motorman.

There is no evidence to support the first, second, or third findings of the jury. Upon the undisputed evidence, therefore, the defendant was entitled to a directed verdict. *Fox v. C., St. P., M. & O. R. Co.* 147 Wis. 310, 133 N. W. 19; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663; *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss the complaint.