CLARK, Respondent, vs. THE FRANKLIN FARMERS' MUTUAL
FIRE INSURANCE COMPANY, Appellant.

*May 22 — June 20, 1901.*

*Insurance: Lightning: Cause of loss: Court and jury: Instructions.*

1. In an action upon an insurance policy to recover for the destruction
   of mill buildings, alleged to have been caused by lightning, it is
   *held* that the evidence (stated in the opinion) establishes that the
   undermining of the buildings by high water caused the loss, and
   that the circumstances (including the facts that a small portion of
   roof and a few shingles were found above where the water had
   reached, and that some of the timbers were badly broken and
   splintered, though without marks of fire) relied upon to show that
   lightning was the cause furnished only a slight basis for specula-
   tion and conjecture and did not warrant the submission of the
   case to the jury.
2. An instruction in such case containing the suggestion, not war-
   ranted by evidence, that the directors of the insurance company
   were uncertain as to whether lightning caused the loss or not,
   and hence that it was proper for them to submit the matter to a
   jury, is *held* erroneous.

APPEAL from a judgment of the circuit court for Rich-
land county: B. F. DUNWIDDIE, Judge. *Reversed.*

Action on an insurance policy to recover for loss alleged
to have been caused by lightning. The property insured
was a gristmill and sawmill operated by water power. The
sawmill had been out of use for some years before the loss
occurred. The dam extended across the river at right angles
from east to west. The river turned southeasterly below
the dam, and the westerly banks thereof were precipitous
rocks. Above the dam on the east side of the stream was
a structure called the "old mill," on the south side of which
and attached thereto was an addition called the "annex"
running the whole length thereof. The west end of the
mill and annex was supported by posts set on mudsills im-
bedded in the bottom of the pond at the easterly edge thereof.

Such posts were planked up from the top of the mudsills to a sufficient height to prevent water from flowing out of the pond and under the mill. In such protection planking a bulkhead was located through which water was formerly taken to run the sawmill. There were two gates at this point which were used, when necessary, as waste gates. There were ten or eleven other waste gates located in the dam. A few feet south of the annex was the north side of the gristmill, which was built in two parts, the west part being what was called the "old mill," and the east part the "new mill." The north side of the gristmill coincided with the north side of the dam. On the west side of such mill was the gristmill flume. The old mill was over the water and supported on posts. The new mill was attached to the old mill on the east side and was all on the bank of the stream. The wasteway for the water from the gates at the sawmill was under the old part of the gristmill and about fifteen feet wide, it being planked at the bottom and on the east and west sides.

At the time of and before the loss occurred, four gates in the dam were open, two near the east side and two near the west side thereof. The gates had been up a sufficient length of time to substantially empty the pond, except what was retained by the deadhead of the dam. On June 11, 1899, at or before twelve o'clock at night, a severe rain storm commenced, which lasted for several hours and was accompanied by unusually powerful electrical disturbances. About two o'clock on such night there was a very sharp flash of lightning, followed immediately by a loud report, indicating that lightning had struck near by and in the vicinity of the mill. In a minute or so a noise was heard coming from the direction of the mill, as of the falling and crashing of a building, which noise lasted for some time. In the early morning hour the water in the river was quite high, the banks being full to overflowing, above and below the dam.

Thereafter the water was much higher.  The new part of the gristmill and all of the annex except a small part thereof at the end furthest from the pond, were gone, and lay in broken and disorganized heaps of material at various points from twenty to forty rods below the dam.  Timbers were broken and splintered, but there were no marks of fire on any part of the wreckage or on any of the remaining portions of the building.  There were some shingles and a small portion of the roof near the mill site above where the water had reached.  The bulkhead at the west end of the sawmill was gone and the water had made for itself a new channel southeasterly under the sawmill and through the territory where the annex and the new part of the gristmill were formerly located, of a sufficient width and depth to draw thereto, mainly, the water of the river, there being a strong current setting into and through such new channel and out of it to the natural bed of the stream south of the dam.  The water had carried out the foundation of the east part of the gristmill and the bank which the same formerly rested upon, to a considerable depth, and was still beating against and eating away such bank.  The situation was such that if the action of the water mentioned occurred before the destruction of those portions of the buildings which had fallen and disappeared, that result was not only a natural and probable but it was a necessary result of such action.

At the close of the evidence the court submitted the case to the jury to say whether the loss was caused by lightning as alleged, saying, among other things, that since it was doubtful in the minds of the directors of defendant whether the loss was so caused or not, it was proper for them to submit the matter to a jury for a decision of the question.  The instruction in that regard was duly excepted to by defendant's counsel.  The jury found for plaintiff.  There was no question as to the amount of the loss.  Defendant's counsel, by proper motions at proper times, insisted that there was

no evidence to warrant a finding in plaintiff's favor. Judgment was rendered upon the verdict.

*F. W. Burnham*, for the appellant.

For the respondent there was a brief by *L. H. Bancroft* and *W. S. McCorkle*, and oral argument by *Mr. Bancroft*.

MARSHALL, J. The burden of proof was on respondent to establish by a preponderance of the evidence, to a reasonable certainty, that the destruction of the buildings was caused by lightning. To merely prove that they might have been so destroyed and that they might just as likely have been destroyed by water, or to prove the existence of circumstances which were merely sufficient to constitute a foundation for speculation and conjecture, was not sufficient to warrant a recovery by plaintiff. *Hyer v. Janesville*, 101 Wis. 371. 'Judicial determinations must rest upon facts, and legal liability must be determined by the law in application to facts. That does not exclude circumstantial evidence, for such evidence is often the strongest, but it must establish facts.' *Sorenson v. Menasha P. & P. Co.* 56 Wis. 338. In this case the situation on the morning after the loss, irrespective of the fact that a small portion of the roof of one of the buildings and a few shingles were beyond where water had reached and the fact that some of the material of the buildings was so badly broken and splintered as to indicate application directly thereto of great force, was such as to furnish a perfect explanation of the cause thereof. As indicated in the statement, the foundation of those parts of the buildings which disappeared and those parts that remained partially in place, had been so disturbed as to render what had occurred to such buildings not only a perfectly natural and probable but a necessary result thereof. If a portion of a roof and a few shingles were deposited on the bank of the stream a little way from the site of the mill, as testified to by the plaintiff, it is much more

Clark vs. The Franklin Farmers' Mut. Fire Ins. Co.

probable that the cause thereof was wind than that it was lightning. The circumstance that a board that was standing in the mill against the side thereof was broken, is too trifling to be considered. The splintered condition of some of the timbers, testified to, and that of the material of which the buildings were composed, as such material was found after the loss occurred, is much more reasonably accounted for by the fall of the structures from their supports, the tearing away thereof from the structures that remained, and the collision of the floating wreck with the rocks on the westerly side of the stream, than by lightning. The natural course of the water, as it passed from the new channel into the natural bed of the stream, was southward against the rocky bank before described. The wrecked portions of the buildings must have been carried by the water with great force against such rocks and been pressed and ground against them while passing rapidly southeasterly around the bend in the stream for a distance of twenty rods or more to where the same finally lodged. There were no marks of fire anywhere, such as are customarily found where lightning has come in contact with dry wood. On the whole, we are unable to see any justification in the evidence for the finding that the buildings were destroyed by the latter cause. The evidence is strongly the other way. It establishes so clearly that the undermining of the buildings by water caused the loss complained of, that the circumstances relied on to show that lightning was the cause at best furnish only a slight basis for speculation and conjecture. The judgment must be reversed for that reason.

Courts and jurors are expected to view evidence in the light of reason and common sense, and not say officially that a fact may or does exist which they would otherwise say does not. The mere fact that a claim is made and evidence is produced in an attempt to sustain it, does not warrant the submission of an issue in regard thereto to a jury

for determination. In this case a verdict should have been directed in favor of the defendant without hesitation.

It is considered that the instruction to the jury that it was proper for the directors of the appellant to submit the controversy to a jury for determination since they, the directors, were uncertain as to the cause of the loss, was wholly unwarranted. There was nothing in the evidence or the conduct of appellant or its counsel upon the trial to indicate that there was any such uncertainty on their part. On the contrary it clearly appeared that they attributed such loss to the action of the water from first to last, and that, at every stage of the trial where it was proper to do so, it was insisted that there was no evidence to establish the claim of plaintiff that the loss was caused by lightning. The suggestion of the court that appellant's directors were uncertain as to whether lightning caused the loss or not, under the circumstances, quite likely was prejudicial to appellant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.