BOUCHER, Administratrix, Respondent, vs. WISCONSIN CENTRAL RAILWAY COMPANY, Appellant.

*November 12—December 7, 1909.*

*Railroads: Injury to brakeman uncoupling cars: Negligence of engineer: Questions for jury: Comparative negligence: Special verdict: Instructions to jury: Excessive damages.*

1. Upon evidence tending to show, among other things, that, to enable a brakeman to uncouple a chain coupling between a switch engine and a car, he gave, and the engineer received, the signal to "slack the pin;" that this called upon the engineer to move his engine a few inches only; that the engineer understood the situation and knew that a movement of a few inches would suffice, but that he moved his engine several feet, bringing together the drawbars of the engine and car, which had been about two feet apart, and crushing between them the brakeman, who after drawing the coupling pin had moved forward between the drawbars,—it is *held* that the engineer had reason to anticipate that an injury might result from his management of the engine as stated, and that the question of his negligence in such management was for the jury.

2. Although in such case the brakeman was, as a matter of law, guilty of contributory negligence, yet it not appearing that he deliberately placed himself in a position imminently dangerous to his life, or that he did not get between the drawbars through slight inadvertence, the questions whether the engineer's negligence was the proximate cause of the death and whether the decedent's negligence was slighter or greater than that of the engineer were properly for the jury.

Boucher v. Wisconsin Central R. Co. 141 Wis. 160.

3. In a question in a special verdict asking whether the negligence of an engineer was "*less* or greater as a contributing cause" of the death of a brakeman than the negligence of the brakeman himself, the word "less" conveyed the same idea as the word "slighter" used in sec. 1816, Stats. (Laws of 1907, ch. 254).

4. Instructions expressly informing the jury that in assessing damages for the death of a married man they could not go beyond compensation for the pecuniary injury to the wife, are *held* to have corrected any misconception which might have arisen from a remark, made by the court in reply to a statement by counsel, that "the question is, How much pecuniary loss has the relative suffered—that is, in this case, the wife and children of the deceased suffered—by reason of the death?"

5. An award of $7,500, confirmed by the trial court, for the death of a brakeman, is *held* not excessive.

BARNES and MARSHALL, JJ., dissent.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

At North Fond du Lac the defendant has an arrangement for handling cinders. The arrangement is the only one of its kind operated by the defendant. Under one of the defendant's tracks is what is known as the "cinder pit." On the bottom of the cinder pit, which lies nine or ten feet below the track, are two sets of parallel tracks running east and west. At the north and south of the tracks in the pit are abutments. The east end of the pit is closed. The pit is reached by a curved and inclined track about 300 feet long. There is room in the cinder pit for two gondola cars. When the two cars are in the pit they come very close together and are very close to the abutments. In using the pit the cars are at first run partly in, being blocked so that the half farthest in is under the track above. Locomotives on the track above are stopped over the cars in the pit, and the ashes and cinders which are dumped therefrom fall between the rails into the cars below. When the cars are half filled the block is removed from the wheels and the cars are allowed to slide down the incline so as to permit the filling of the other half. Owing to the curve and the incline of the track leading into the pit a chain coup-

ling is used between the cars and the engine when cars are placed in the pit.

The plaintiff's intestate had been employed by the defendant for about nine months as a brakeman. On August 4, 1908, the deceased was assigned to assist, under the switch foreman, at the task of removing the filled cars and of placing empty ones in the pit. The two loaded cars were removed by the foreman of the regular switch crew with the aid of an engine, crew, who had not performed this work before, and an empty car had been placed on the north track. The deceased had meanwhile tended a switch. When the second car was being placed the deceased assisted and did the uncoupling of the engine from the car. The engine had run the empty car too far into the pit and it was necessary to back out. When the car was in proper position it was blocked there by Loucks, the foreman of the regular switch crew, who then stepped back to the north of the car, so that he was about ten feet from the deceased. The engine was still attached to the empty car by the chain coupling, and it was necessary for the engine to move a little toward the car so that the pin holding the chain could be pulled out and the engine uncoupled from the car. The space between the drawbars of the car and the engine was about two feet. The deceased stepped from the north between the engine and the car to draw the pin, and was then on that side of the drawbars. He gave by word and sign the signal for "slack the pin." The foreman communicated the signal to the fireman, by whom it was, in turn, communicated to the engineer. Thereupon the engineer released the brake on the engine and it slowly started toward the car. Loucks, the foreman of the switch crew, was the only person who was observing the deceased. He testified that the deceased, whose back was toward him, pulled the pin; that the chain dropped from the car; that just after the deceased pulled the pin he moved forward between the drawbars of the car and the engine; and that as he stepped forward he turned his face toward

the engine and was immediately caught between the draw-
bars. The engine moved forward, and the deceased was
caught and injured and crushed between the drawbars of the
car and of the engine. He died almost instantly. Besides
the injury to the part of the body caught between the draw-
bars, the thumb of the right hand of the deceased was injured.
The jury found that the negligence of the engineer in slack-
ing the pin was the proximate cause of the death of the de-
ceased, and that it was greater as a contributing cause to his
death than the negligence of Boucher himself. They also as-
sessed the damages. This is an appeal from the judgment on
the verdict.

For the appellant there was a brief by *W. D. Corrigan* and
*W. A. Hayes,* and oral argument by *Mr. Hayes.*

For the respondent there was a brief by *Ecke & Hughes,*
attorneys, and *J. E. O'Brien,* of counsel, and oral argument
by *Mr. O. H. Ecke* and *Mr. O'Brien.*

The following opinion was filed December 7, 1909:

SIEBECKER, J. The appellant assails the court's decision
holding that the evidence in the case required submission of
the issues whether the engineer was negligent in conducting
the defendant's business at the time Boucher was injured; if
so negligent, whether it was the proximate cause of the injury,
and whether such negligence was a greater or less contrib-
uting cause in producing Boucher's death than his contribu-
tory negligence. The facts of the case controlling these ques-
tions are within a narrow compass, and are so interrelated that
a reference to them will suffice for the consideration of all the
questions presented by these contentions. The foregoing
statement of them makes clear what were the duties assigned
Boucher and the engineer in conducting the defendant's busi-
ness at the time of the accident. It is argued that the facts
wholly fail to show that the engineer was negligent in manag-
ing the engine for the purpose of slacking the coupling chain

when signaled so to do by Boucher, and that the accident was wholly due to the fact that the decedent deliberately and negligently stepped into a place of obvious and imminent danger.

It is undisputed that the car had been shoved into the cinder pit; that it had been blocked; that the engine had come to a stop; that the chain forming the coupling between the car and the engine was taut so that the coupling pin could not be released without slacking; that the decedent was required in the performance of his duty to step between the car and the engine to do the uncoupling; that it devolved on him to give the signal for slacking the coupling chain to enable him to pull the coupling pin; and that it was the duty of the engineer to move the engine for this purpose when the signal therefor was communicated to him. There is no dispute but that the signal to this effect was communicated to the engineer for this purpose. The switch foreman testifies that the decedent gave the signal for the "slack of the pin" and that he communicated it to the fireman. The fireman testifies that he communicated it to the engineer and that he thereupon moved the engine forward. The engineer testifies that he received the signal "to slack ahead," which implied that he was to proceed until signaled to stop. He states that his recollection of the signal is uncertain. He also testifies that he was fully informed that the car had been blocked; that the engine was required to move forward only a few inches to slack the chain in order to loosen the coupling pin; that a movement of a few inches would suffice and was the only movement toward the car required of the engine; that the last act before moving the engine away from the car was the uncoupling; and that he fully understood all the facts and conditions of the service in which they were then engaged. The court submitted to the jury the question of whether the engineer under the circumstances was negligent in the management of the engine which resulted in a forward movement of several feet and in contact with the car.

The point is made that the engineer had a right to move the engine as he did in response to the signal given him.    There is dispute, however, as to what signal he received.    The jury evidently found that he received the signal to slack the pin, and that this called on him to move the engine only a few inches.    There is evidence of other employees of the defendant in support of this view.    Furthermore, the engineer was fully informed of the whole situation and the conditions under which he was acting and knew that he was required to move the engine no more than was necessary to slack the pin.    In fact he moved the engine several feet, and thereby brought about the contact between the engine and the car whereby Boucher was injured.    It is evident that the movement of three or four inches of the engine could have been made readily.

However, it is claimed that the engineer had no reason to anticipate that an injury would result from the movement made by the engine.    The situation apprised him that Boucher was then between the car and the engine for the purpose of pulling the coupling pin, and that such a movement as was made must result in a collision with the blocked car in the cinder pit.    Surely such a movement of the engine was fraught with danger to the decedent, who was in a proper position to perform his service, and the engineer had a reasonable basis for anticipating that an injury might result from such management of the engine.    We are led to the conclusion that the facts and circumstances of the case required that the question of the engineer's negligence in the management of the engine should be submitted to the jury as was done in the first question of the special verdict.    The court informed the jury that this question included the inquiry as to whether the engineer was negligent in moving the engine forward to remove the strain from the coupling chain and thus to free the coupling pin so that it could be pulled.    The instructions in this respect fully informed the jury of the scope of this issue

and of what it embraced. The court in calling the jurors' attention to the evidence on this subject did not restrict the jury to the portion he alluded to, but instructed them to take into consideration all the evidence bearing on the inquiry so submitted to them. The instructions so given were free from undue restrictions on the jury in their deliberations and in no way misled them.

It is contended that the court erred in refusing to instruct the jury to the effect that if the engineer was found guilty of negligence it was not the proximate cause of Boucher's death, and that his death was proximately caused by his contributory negligence. The court found as matter of law that the decedent was guilty of contributory negligence. The argument is made that the engineer had a right to rely on the fact that Boucher under no circumstances would occupy a place wherein he might be caught between the drawbars of the car and the moving engine and thus meet certain death, unless he deliberately placed himself in this obviously and imminently dangerous position. Is this a legitimate deduction from the facts and circumstances of the case? We do not so regard it. Boucher's conduct must be considered in the light of the situation as disclosed by the facts and circumstances under which he performed his duties. It is clear that he took a position between the car and the engine where he could readily grasp and pull the coupling pin from the coupling device of the car, and that he pulled the pin and thereby caused the chain to drop. The jury from the evidence must have found that in giving the signal to "slack the pin" he called for a forward movement of the engine of but a few inches. In his position between the car and the engine his back was turned toward the engine, and there was sufficient space for him to pass between the drawbars of the car and the engine. Having given the signal to the engineer to come forward with the engine sufficiently to slack the pin, he, in the exercise of reasonable care, might well anticipate that the engine would move no farther

than required for this purpose. While he cannot be deemed free from blame in not looking to see if the engine was approaching, it does not appear but that he may have taken the step to complete his duties, and that in the ordinary course of discharging his duties he got into this space through very slight inadvertence, or that the physical condition of the track may have caused him to take this step. All this refutes the assumption that he deliberately placed himself in a place imminently dangerous to his life. From the situation thus presented it cannot be said that the duty to protect himself against the hazards incident to the engineer's conduct rested solely on Boucher and that the engineer was free from legal responsibility as to the result. From the very nature of the situation and corresponding duties of the two men to guard Boucher against injury it may be said that the negligence of the engineer was of a graver and weightier character as a contributing cause to Boucher's death than that of the decedent. After careful examination of the evidence and much reflection we have become persuaded that the facts of the case are not so clear upon the issue of the engineer's negligence and its proximate contribution toward causing Boucher's death, and upon the question of whether the decedent's contributory negligence was slighter or greater than that attributable to the defendant, as to require determination of them by the court as matter of law. The court properly submitted them to the jury.

It is strenuously argued that the jury cannot determine from the evidence whether Boucher's death was caused in greater part by the negligence of the defendant as compared with his contributory negligence, and hence that the plaintiff has failed to establish her cause of action. In support of this claim the contention is made that the burden is on the plaintiff to establish a cause of action, and that the evidence fails to show any grounds justifying Boucher's stepping between the drawbars, and he must therefore be held to have taken this step knowing it meant certain death. The facts and circum-

stances of this situation already adverted to we think negative this claim, and show that the jury could have found that he entered this space through slight inadvertence, and that the conduct of the engineer in comparison therewith may be considered a weightier and graver default. The provisions of the statute regulating these questions and the province of the court and the jury under them were considered and interpreted in the cases of *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756, and *Zeratsky v. C., M. & St. P. R. Co., post,* p. 423, 123 N. W. 904, and therefore need not be repeated here.

An exception is urged to the testimony of Dr. Pullen for the reason that it was immaterial and from its nature operated to prejudice the jury in a controversy of this kind. We discover nothing prejudicial in the evidence. So far as received it was relevant to the inquiry as to how Boucher came to his death.

It is urged that the court erred in denying defendant's motion to strike out the evidence of the engineer's negligence in moving the engine as not within the allegations of the complaint. The allegations of the complaint charged the engineer with carelessly and negligently operating the engine by causing it to move forward at a dangerous speed and for a distance imperiling the decedent's safety and thereby causing the injury. The evidence offered was relevant and material to these allegations. The objection that the questions of the special verdict did not properly cover the litigated issues and that they were so framed as to mislead the jury is not sustained. As heretofore indicated, the phrase in the first question, "slacking the pin," was properly explained and defined by the court's instruction as covering the inquiry respecting the negligent movement of the engine under the engineer's management. The objections to the second and fourth questions are based on the idea that Boucher's negligence was the sole proxi-

mate cause of his injuries, and that the court should have so ruled as matter of law. The foregoing consideration of the facts disposes of these objections.

The requested questions for the special verdict relate to the same subject and were properly refused.

The validity of ch. 254, Laws of 1907, is merely suggested. The decision in *Kiley v. C., M. & St. P. R. Co., supra,* is determinative of this question.

Numerous detailed portions of the instructions given to the jury are called to our attention as erroneous and prejudicial. Many of them pertain to the questions considered above, and were not subject to the criticism made in view of the foregoing considerations and our conclusions as to those questions.

The fourth question is assailed as incorrectly framed under the statute, in that the words "less or greater" were used, instead of the words "slighter or greater," in determining decedent's negligence as a contributing cause in comparison with that attributable to the company. We discover no cause for complaint in this. The word "less" as here used conveyed the same idea to the jury as the word "slighter" as used in the statute.

Defendant urges that a new trial should have been awarded because an impartial trial was denied it, and avers that this was occasioned by the improper arguments and comments concerning the evidence and fictitious issues used by the plaintiff's counsel before the court and jury, by improper comments on the evidence and admonitions to witnesses by the court, through the order of the court that the witnesses be kept in a room separated from the courtroom, by permitting the jury to view the premises, and by plaintiff's manner of conducting the case. It is claimed that the plaintiff's manner and method of eliciting proof and of bringing immaterial and irrelevant matters to the attention of the jury were calculated and did operate to prejudice the defendant. We have examined all of

these points and find nothing in the record showing that any prejudice resulted in any respect. The record discloses that the parties had a full, fair, and impartial trial.

The damages awarded are alleged to be excessive. It is claimed that the court in reply to a comment by counsel to the jury confused and misled the jury by the following observation:

"The question is: How much pecuniary loss has the relative suffered—that is, in this case, the wife and children of the deceased suffered—by reason of the death?"

When the court submitted the question of damages to the jury they were instructed:

"You are not warranted in giving damages not founded upon testimony, nor can you go beyond compensation for the pecuniary injury to the wife."

The court in effect repeated the information that damages could only be allowed the wife to compensate her for the injury caused her by her husband's death and properly specified the elements entering into her loss. We are satisfied that the jury were thereby fully informed of the correct rule of damages, and that any misconception which might have existed as a result of the first statement made by the court was fully corrected. The damages were found at the sum of $7,500. The jury is given a broad discretion in assessing damages. The trial court confirmed the verdict. This is of weight in such cases. We are of opinion that the facts and circumstances of the case authorized the jury to assess the amount awarded. *Ryan v. Oshkosh G. L. Co.* 138 Wis. 466, 120 N. W. 264.

We find no reversible error in the record.

*By the Court.*—Judgment affirmed.

The following opinion was filed December 7, 1909:

BARNES, J. (*dissenting*). The facts in this case are few and simple. The trial court held as a matter of law that the dece-

dent was guilty of contributory negligence, because, without any apparent reason or excuse for his so doing, he attempted to pass between the car and the engine while the latter was. in motion and was caught between the bumpers. This court concludes that the trial court was right in so holding. The space between the bumpers was but two and one-half or three feet before the engine started its movement toward the car. The decedent knew that the engine slacked ahead, else he could not have pulled the coupling pin. He gave the signal for such slacking in order that he might pull the pin. Presumably he knew the engine was in motion when he attempted to pass through; at least, in the exercise of ordinary care he should have known it. As a matter of fact his face was turned toward the engine when he was caught. It is useless to speculate on how he happened to place himself in the peril which resulted so disastrously, as there is no evidence to show any reason or any excuse for his so doing. The jury found that the engineer was negligent in not slacking his engine two or three inches instead of two or three feet. The engineer could hardly be said to have anticipated that injury would result from bringing the bumper on the engine in contact with that on the car, because couplings and uncouplings are usually made by bringing the bumpers in contact with each other. It is a rather far-fetched assumption to say that the engineer in this case should have apprehended that the deceased would attempt to pass through while the engine was in motion, or that any accident would result from permitting the bumpers to come in contact with each other. But, assuming that there was evidence from which the jury might have found that the engineer was negligent, I do not think recovery should be permitted.

Our comparative negligence statute is new. We must assume that the legislature meant what it said. Where the plaintiff is guilty of contributory negligence he cannot recover unless (1) the negligence of the defendant is greater than his,.

and (2) unless the negligence of the defendant contributes in a greater degree to produce the injury complained of than does that of the plaintiff. These two essential facts must be established by the evidence as any other fact in the case. If there is evidence to sustain the findings of the jury they should stand. If there is not they should fall. I fail to see where there are any facts or circumstances proven in this case that warrant a finding to the effect that the negligence of the defendant was greater in degree than the contributory negligence of the decedent, or that the negligence of the defendant could by any possibility contribute in a greater degree to produce the injury than the contributory negligence of the decedent. I think, therefore, that these findings of the jury should have been set aside for want of evidence to sustain them, and judgment awarded for defendant. It seems to me that the apparent purpose of this law has been defeated to a large extent by the requirement therein of a finding that the negligence of the defendant must contribute in a greater degree to produce the injury than the contributory negligence of the plaintiff. There can be no contributory negligence except where the accident would not have happened but for the negligent act of the servant. Neither is the master negligent unless his act or omission was the proximate cause of the injury. How in the ordinary case it can be said that the negligence of the one is a greater producing cause of the injury than that of the other it is difficult to see. The statute is plain, however, and if it is faulty it should be corrected by the lawmaking power rather than by inadmissible judicial construction.

The following opinion was filed December 21, 1909:

MARSHALL, J. (*dissenting*). I agree with all said in the dissenting opinion by my Brother BARNES, and choose to add a few observations of my own.

This case presents one of a class of those distressing situations which must be met with courage in administering our

modified ancient system of negligence law.  The fact that the
system, in many cases, makes no provision for unfortunates
who are daily sacrificed upon the altar of industry, nor for
their dependent families whose destroyed welfare is a like
sacrifice, is a most lamentable defect in our remedial Code.
That the subject is, *as it is,* is one of the most significant illus-
trations of "man's inhumanity to man."  It is, I may well
say, a most distressing commentary upon the wisdom of the
lawmaking power.  'Tis "strange," 'tis "passing strange"
that such commentary should, as it does, apply more strongly
to our country than to any other civilized nation on earth, not-
withstanding it has been blessed for more than a century with
exceptional liberty of action as regards constructive legisla-
tion for the public welfare.

If it were given to courts, by their humanity to man, to sup-
ply the want of written law, instead of their sphere of action
being confined, as it is, to the mere administration of law as
they find it, not turning aside, through pity or charity, to
punish upon one side, or afford relief upon the other by tak-
ing the burden of misfortune from the backs of the weak and
humble and casting it upon those of the strong and capable,
nor to make distribution of misfortunes according to mere
dictates of humanity, nor to look with any greater degree of
favor upon one than upon the other, because of situations, or
needs, after the manner of equitable arbitration, we could ap-
proach such a pitiful result as the one in hand in a different
attitude.  No suggestion is involved in this, that any one, in
reaching the conclusion from which I dissent, was actuated by
any less fidelity to the great trust with which we are charged,
than the writer.  Different mentalities with equal degrees of
sympathy for human suffering, and stern fidelity to admin-
ister a trust from the standpoint of absolute right as incorpo-
rated into the law, see things in different aspects.  Hence the
greater certainty of many minds reaching the proper standard,
than one.

When the time shall come that the moral sense and con-

science of lawmaking power shall be so stimulated as to devise
a practicable system, whereby all sacrifices, like the one in
hand, attributable to mere human inadvertences which, in the
very nature of things, must always be unavoidable incidents
of industrial life, and be as progressive in number and dis-
turbing consequences as are human activities,—will be dis-
tributed and added to the cost of things entering into con-
sumption, with a minimum of distress and waste, the vista of
the future for all will have much more of sunshine.   Some-
time the now unnecessary waste and suffering from the inad-
vertent incidents of human industry will be obliterated and
there will be a simple method of so distributing their immedi-
ate effects over the general mass of things entering into con-
sumption, as to minimize the individual losses and soften the
condition in each case of the one offering up the sacrifice with-
out appreciably changing the general level of mankind served
directly or indirectly by the toilers.   We cannot doubt the wis-
dom of lawmaking power, suitably aroused, to attain this end.

With the thought that the foregoing observations are not
out of place in a legal opinion and may bear fruit, some other
day, I will proceed to a brief discussion of this case.

According to the verdict and the undisputed evidence, the
deceased was guilty of a want of ordinary care in stepping
between the bumper of the standing car and that of the en-
gine as the two were closing together, proximately contrib-
uting to his death.   That serious injury or death from any
attempt to pass between the bumpers was highly probable,
seems unquestionable.   It must be remembered that as the de-
ceased made the fatal step he faced the engine.   He could not
have helped seeing it and that it was in motion.   The engi-
neer could not have well seen him.   That the engineer should
reasonably have apprehended the deceased might do such a
reckless act, cannot, it seems, be thought for a moment.   That
he should reasonably have apprehended the deceased would
be injured, if not clear from the cars, in case the bumpers

came together, as they often do, as a matter of common knowl-
edge, in case he merely failed to step out from between the
cars before that event, it seems is quite as remote.

At this point we have reached, I think, a fatal infirmity in
the court's reasoning. Such reasoning is to the effect that
there was imminent danger, in any event, of the deceased get-
ting injured if the engineer backed his engine more than a few
inches, and particularly if he backed so as to close the bumpers
together. I do not so understand the evidence. On the con-
trary, I understand that if the deceased had remained outside
the path of the bumpers, though between the end of the car
and that of the locomotive, and paid the attention to his sur-
roundings which the engineer had reason to expect he would,
there would not have been any likelihood of his being injured.
So it seems the case, necessarily, comes down to whether the
engineer had any reason to expect the deceased would attempt
to pass between the bumpers, before there is any room for a
comparison of direct effects of faults as regards the two actors
in the tragedy.

A second fatal infirmity, in my judgment, in the court's
reasoning, is the logic indulged in, minimizing the gravity of
deceased's fault in placing his person between the bumpers.
"It does not appear," says the court, "but that he may have
taken the step to accomplish his duties, and that, in the ordi-
nary course of discharging his duties, he got into the space
through oversight, inadvertently, or that the physical condi-
tion of the track may have caused him to take this step." As
I understand that, it proceeds directly contrary to the verity
in the case that the deceased was guilty of a want of ordinary
care proximately contributing to his death. I must view the
finding on that subject in the light of the construction which
the court has placed on the legislative question; *i. e.* that the
words "any negligence" in the question mean any want of or-
dinary care. Moreover, according to all the precedents in
the books, and common sense as well, it is want of ordinary

care, as a matter of law, for a person, in coupling and uncoupling cars, to step between the bumpers where the situation is the same or similar to the one in this case. "He might," says the court, only have been guilty of "very slight inadvertence." Does that not overlook the fact that "very slight inadvertence" is not a want of ordinary care? If he were only guilty of "very slight inadvertence" the verdict is wrong. So the court's logic is beside the case, and clearly so in my judgment. "Very slight inadvertence," or in other words negligence, as this court has uniformly held, is not within the field of responsible causation or defense to it. The decisions to that effect are so numerous that the rule needs but to be stated. *Dreher v. Fitchburg,* 22 Wis. 675; *Ward v. M. & St. P. R. Co.* 29 Wis. 144; *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 65 N. W. 866.

As said in effect in the latter case, this court has adhered, notwithstanding some confusion caused by an opinion now and then, to the classification of negligence as slight, ordinary, and gross. The first is not actionable. The second is, and the first is not a defense thereto. The third is, and neither the first nor second is a defense thereto. *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446.

True, it will be found stated in an opinion now and then, that any negligence, however slight on the part of an injured person, contributing to his injury, is a defense to his action against another whose want of ordinary care was a proximate cause thereof, but it has been explained and corrected over and over again (*Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 341, 84 N. W. 446), and held that it requires more than mere slight negligence to so operate. The law in that regard is too well understood at this late day to admit of serious question. As said in my opinion in *Zeratsky v. C., M. & St. P. R. Co., post,* p. 423, 123 N. W. 904, that rule was one of the very things the legislature, by the act of 1907, intended to change. But the court thinks otherwise, holding that something more than mere negligence is required for attack or defense in a

case of this sort. We must test the verdict in this case and the logic of the court's opinion accordingly, treating the verdict as necessarily meaning that the deceased was guilty of more than slight negligence, or in other words "slight inadvertence."

How can one say that the deceased "may have taken the step" that placed him between the bumpers "in the ordinary course of discharging his duties?" No such movement was required in performing such work. No evidence in the case suggests there was. All the evidence and common knowledge, it seems negative it.

Again, how can one say, as above quoted, without losing sight of the verity that the deceased was guilty of a want of ordinary care, proximately contributing to his death, in placing himself within the zone of imminent danger? Does not the thought that he may have stepped between the bumpers "in the ordinary course of discharging his duties" run directly counter to such verity?

Again, where is the evidence that the deceased stepped between the cars "in the ordinary course of discharging his duties," or evidence "that the physical condition of the track may have caused him to take this step?" The court does not point to any. Counsel for respondent does not claim there is any. There is none in fact. So, is not the logic upon which the result here stands, which is a repetition of the logic upon which the learned trial court grounded the decision, the merest conjecture; a substitution of mere possibility for probability and supposition for facts and evidence of facts, contrary to many decisions of this court? *Gibbons v. Wis. Valley R. Co.* 58 Wis. 335, 17 N. W. 132; *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, 225, 80 N. W. 1020; *Gagan v. Janesville,* 106 Wis. 662, 82 N. W. 558; *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36; *Clark v. Franklin F. M. F. Ins. Co.* 111 Wis. 65, 86 N. W. 549; *Hart v. Neillsville, ante,* pp. 3, 14, 123 N. W. 125, 129.

The above and a large number of cases repudiate the

.method of reasoning by which a conclusion is reached on mere supposition that something might have occurred of which there is no evidence. Very striking instances are those where a person was struck and killed by a railway train in the nighttime, at a railroad crossing, leaving no one to explain how the accident occurred. The idea urged upon the court in such cases that the person killed might have gotten into the pathway of the train under some circumstances that would relieve him from fatal contributory negligence was rejected. *Groesbeck v. C., M. & St. P. R. Co.* 93 Wis. 505, 67 N. W. 1120; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102. In these and numerous instances that might be referred to, the court was urged to hold that fatal contributory negligence was not shown as a matter of law, or so as to warrant a jury in finding it as a fact, because the burden of proof was on the defendant to prove such fact, and any one of several suggested circumstances, of which there was no evidence, was sufficient to relieve the injured one from any fatal fault, and such circumstances should have been negatived by evidence, or the presumption of due care held to prevail. But the court rejected that logic as not legitimate, upon the ground that evidence *prima facie* showing want of due care cannot be outweighed by conjecture.

The last foregoing leads to this fatal infirmity in the court's logic: If mere supposition could be legitimately indulged in at all to efficiently minimize the *prima facie* case of contributory negligence established by direct and circumstantial evidence, when the burden of proof is on the defendant to establish the fact in that regard, overcoming the presumption of freedom from such fault, it cannot on the question of superior direct effect in producing the injury. It must be conceded, I think, the burden of proof on that matter is on the plaintiff. It seems the court must have overlooked that fact in reasoning from conjectural situations and happenings, as if the question were whether there was any contributory fault on the part of

deceased.    That matter, covered by the verdict in favor of the defendant, was confused, it seems, with the new subject, engrafted onto our system by the legislature, in respect to comparative direct effects in producing the results.

I will not pursue the subject of comparative effects further. Looking only at the evidence, freed from all mere suppositions of what might have occurred, of which there is no evidence, we have these plain facts: The deceased, face to the engine which was moving toward the standing car, and observant thereof, or reckless because he was not, but more or less obscured from the engineer's view, with time to step out from between the cars, as he should have done, and as the engineer had every reason to suppose he would do, the instant he pulled the pin, and yet where, as a skilled brakeman, he was in no danger, even if he did not step out, he stepped into the place which, of all others, no reasonably prudent person would ordinarily have expected him to, and was transfixed by the bumpers and killed, as he, more than any other person, under the circumstances ought reasonably to have apprehended might be the case.    I cannot escape so concluding and that the result here should be accordingly, and that the logic upon which a contrary result has been reached runs counter to the general trend of our decisions, modified as they are by the act of 1907.

It seems that I should not close this opinion without acquitting the trial court of having reached the conclusion which has been affirmed, except under the mistaken notion, as appears, that he was really powerless to disturb the finding of the jury. He evidently took the law of 1907 as requiring, under all circumstances, submission to the jury of the question of comparative direct effects of the faults of the adversaries and that the finding, however absurd it might appear to him, was binding.    He took the act of 1907 as it reads, frankly saying that, in his judgment, the verdict was wrong, but that the legislative command was, in all cases, to take the opinion of

Boucher v. Wisconsin Central R. Co. 141 Wis. 160.

the jury and that he did not think it was given to him to re-
ject such opinion., That is my understanding of the learned
judge's excuse for not setting aside the finding which he was
satisfied was wrong. It was in that view, it seems, that he
indulged in speculations, after the manner I have pointed out
in this court's opinion, as to how the jury might have reasoned
from mere supposition to the result reached, for the purpose
of relieving the verdict from any suspicion of being character-
ized by perversity.

The appellant moved for a rehearing, but afterwards with-
drew the motion and on March 21, 1910, obtained a writ of
error removing the cause to the supreme court of the United
States.