YANIKE, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*April 24—May 14, 1912.*

*Master and servant: Injury from defective machinery: Evidence: Credibility: Questions for jury: Negligence: Liability: Reasonable anticipation of injury: Contributory negligence: Assumption of risk: Instructions to jury: Special verdict: Order of proof: Appeal: Harmless errors.*

1. In an action for personal injuries, plaintiff's testimony that as he was stooping near the fly-wheel of an engine to fill a grease box the governor belt broke and flew up, striking him on the side of the head, rendering him unconscious, and causing him to fall and sustain the injuries complained of, was not rendered wholly incredible by his general statement, soon after the accident, that he did not know how he got hurt and that he guessed the fly-wheel must have caught him, nor by proof that the belt was traveling not more than 370 feet per minute, that plaintiff was found lying upon the floor on one side of the engine and the belt on the other, that the belt had so deteri-

Yanike v. Chicago & N. W. R. Co. 149 Wis. 554.

orated as to have little elasticity or tensile strength, and that plaintiff's injuries were of such a character as to indicate that they were inflicted by the working parts of the engine. The question whether plaintiff was so struck and felled by the belt was therefore one for the jury.

2. To render a person liable for the consequences of a negligent act it is not necessary that such consequences should have been specifically contemplated by him; it is sufficient that they are within the field of reasonable anticipation.

3. In the circumstances stated, the question whether or not an injury was reasonably to be anticipated from the defective condition of the belt was for the jury; as were also the questions of plaintiff's assumption of the risk and contributory negligence.

4. Where an instruction given in connection with a question of the special verdict relating to contributory negligence submits as an element thereof the inquiry whether plaintiff knew and appreciated the danger, the question of assumption of the risk must be held to have been resolved by the jury in accordance with their answer to the question concerning contributory negligence, and the refusal to submit a separate question as to assumption of risk was not a prejudicial error.

5. The reception of evidence in rebuttal which should properly have been a part of the plaintiff's case in chief is not ground for reversal where defendant was not prejudiced thereby.

MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries received by the plaintiff while employed by the defendant as fireman at the roundhouse, machine, blacksmith, and repair shops of the defendant in Milwaukee. It was plaintiff's duty to oil or grease and to start and stop an engine to supply power in the various buildings. The complaint alleges negligence on the part of the defendant in not furnishing the plaintiff a safe place to work, in not warning him of the dangers of his employment about the engine, in furnishing an engine which was defective, and particularly in furnishing a defective, decayed, and wornout belt, which was used to run the governor on the engine and which ran on a pulley on a shaft with the

fly-wheel and on a pulley attached to a shaft connected with the governor. The answer denied these negligences and alleged that the plaintiff was negligent and assumed the hazards and dangers that caused his injuries.

The plaintiff testified that on the morning of January 3, 1910, he came from the boiler into the room where the engine stood, lifted a bar in the fence guarding the engine, the shafting, and the attached eccentric, drive pulleys, fly-wheel, and belts, and bent down to lift the cover from a grease cup between the pulley on which the large belt ran which transmitted power to the main shaft, and the pulley on which the belt ran which was connected with the governor; that the belt operating the governor broke, whipped up, and struck him on the right side of the head with such force as to render him unconscious; and that he fell down and received the injuries complained of.

The theory of the defense was that the plaintiff was caught in the pulleys or moving parts of the engine and thus injured.

There was medical evidence that the plaintiff had an injury on the right side of the head; that an operation was performed upon him because of it; that the right shoulder was severely bruised; that the elbow and wrist of the right arm were injured; that several ribs were broken; and that he had nerve and brain troubles as a result.

There was evidence that the belt which plaintiff claims struck him traveled between 360 and 370 feet per minute, and that if the belt were to break while going at that rate it would not fly up, but would simply drop to the floor. There was evidence also that the belt was found lying on one side of the engine and that the plaintiff was found lying on the other side, where he could not have been reached by the belt. There was evidence on these questions, in behalf of the plaintiff, to the effect that the engine had pounded frequently; that such pounding came from the drive shaft and might have resulted in a jerking upon the belt which would tend to cause it to break suddenly and cause it to fly violently up and out from the

point of breakage; and there was evidence that one end of the belt lay near the plaintiff's head when he was discovered.

There was no positive evidence as to how the injuries suffered by the plaintiff, other than the one upon the head, were received, for there were no eye-witnesses of the accident. The circumstances all corroborate the inference that they were inflicted by the moving or revolving parts of the engine, either by the plaintiff having been caught and drawn against the moving parts of the machine or by his falling upon them.

The jury returned the following verdict:

"(1) Was the plaintiff injured on January 3, 1910, while in defendant's employ and at defendant's roundhouse? A. (by the court). Yes.

"(2) Was the plaintiff struck on the head by a part of the governor belt attached to the stationary engine in defendant's roundhouse? A. Yes.

"(3) Did the defendant negligently fail to provide a safe, proper, and suitable governor belt for said stationary engine? A. Yes.

"(4) If you answer the second and third questions each 'Yes,' then answer this question: Was such failure of the defendant to provide a proper, safe, and suitable governor belt for said stationary engine the proximate cause of plaintiff's injuries? A. Yes.

"(5) Was the plaintiff guilty of any want of ordinary care which proximately contributed to his injuries? A. No.

"(6) If the court should be of the opinion that plaintiff should recover, at what sum do you assess his damages? A. $3,500."

This is an appeal from a judgment on the verdict.

For the appellant there was a brief by *William G. Wheeler,* attorney, and *Edward M. Smart,* of counsel, and oral argument by *Mr. Smart.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *W. L. Gold.*

SIEBECKER, J. It is contended that the evidence is without dispute in support of the ultimate fact that the plaintiff's in-

juries resulted from having his arm caught in the drive wheel and drive belt; that this caused him to be thrown onto the moving parts of the engine connected with the driving shaft; and that he struck these parts in a way that caused the injuries complained of. This claim entirely ignores the plaintiff's evidence. He testified that he approached the machinery at the drive wheel of the engine by lifting the guard; that he took a position near the machinery in order to take off the cover of a grease box to fill it with grease; and that, while in a stooping posture and about to take hold of the cover of the grease box located between the drive wheel and the pulley carrying the governor belt, the belt broke and struck him on the head, causing him to fall and receive his injuries. He had no further recollection of what took place and did not know in what manner the various injuries he then received were inflicted.

1. It is argued that his statement that the governor belt thus caused him these injuries is rendered wholly incredible by the following facts: When first he was asked, after the injury, how he got hurt, he stated he did not know and that he guessed the fly-wheel caught him; the position in which the body was found; the nature of his injuries; the facts and circumstances showing that the governor belt could not have struck him as he testified. As to the weight of this alleged former statement, it is manifest that the plaintiff did not undertake thereby to give in a detailed manner what occurred at the time, but he merely stated generally, in reply to questions put to him a few days after the injury, that he guessed the fly-wheel caught him. It is apparent from the context of the statement that the plaintiff was not attempting to give a detailed account of what occurred and what caused him to be injured. It is quite probable that when he fell as he testified, this caused him to come into contact with the drive belt or the fly-wheel, and he stated his conclusion during this interview. Nor, does the position of his body on the floor after the in-

juries, or the nature of his injuries, necessarily refute his statement that he was struck by the broken belt in the manner he testifies.   The jury may well have found that, after being stunned by the blow of the belt, he fell upon the moving parts of the machinery before him and that he was struck thereby, and that this produced the different injuries he sustained and caused him to fall onto the floor into the position in which he was found.   The nature of his injuries and the position of his body on the floor could well be produced by coming in contact with the moving wheels and the pitman after he was stunned by a blow and caused to fall onto these moving parts of the machinery.   The evidence on these points clearly raised an issue of fact for determination by the jury and the court properly submitted it to them for a decision.

2. It is further contended that it is a physical impossibility that a belt of the size of this governor belt, running at the rate of speed it did and under the tension to which it was subjected, could, when it broke, whip over and fly with sufficient force toward the plaintiff to strike him as he testified it did. That the belt broke is not disputed.   It is, however, averred that it appears that the material of the belt had so deteriorated from excessive absorption of machine oil that it had little if any elasticity or tensile strength and required but little force to break it, and hence, under well known physical laws, the broken end could not have whipped over or flown toward the plaintiff and have imparted a blow on his head sufficiently heavy to cause him to be stunned and to fall.   Counsel's argument on this point assumes these conditions as matter of common knowledge in the light of the facts and circumstances shown by the evidence.   There are, however, insurmountable obstacles to such an assumption.   The plaintiff's evidence is positively and clearly to the effect that the end of the belt whipped up and flew toward him and that it struck him with such force that it stunned and felled him.   Furthermore, the inference from the evidence of some of the witnesses who had

expert knowledge on the subject corroborates the plaintiff's evidence and is to the effect that such a result was probable under the conditions here presented. Another claim is that the belt could not have so struck the plaintiff because the evidence shows that it dropped into the space between the pulley on the shaft on which it ran and the pulley near the governor. True, some of.the witnesses so locate the belt after the accident, but this is controverted by the plaintiff and by inferences from facts stated by others. Nor does it conclusively follow from such location of it that it did not whip or fly up and strike the plaintiff as he claims. These varying facts and justifiable inferences required that this question be submitted to the jury.

3. It is strenuously asserted that the facts wholly fail to show that the defendant could reasonably have contemplated that any.injury would probably be caused to some person by this defective belt. If the facts and circumstances·are such that the consequences attributable to the negligence charged are within the field of reasonable anticipation, then the party guilty thereof is liable, though they may not have been specifically contemplated by him. *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271, and cases there cited. The argument upon this point rests largely on the contention advanced by the appellant to support the claims respecting the facts involved in the foregoing question, to the effect that it was wholly improbable· that a break in this belt, in the light of the conditions and the uses and functions to which it was applied, would cause an injury to any person. Viewing the situation as we have indicated, the question arises: Are the injuries found by the verdict as resulting from the defendant's negligence of such an unusual and extraordinary character as to place them outside of the ordinary experiences of life and hence not to be anticipated by a person of ordinary intelligence and prudence? It does not so impress us. The fact that a defective belt may, .when in operation, break and impart a dangerous blow to an operative near it, is not such an

extraordinary event as to remove it beyond the field of foreseeable dangers. The circumstances and conditions here presented are not so explicit and clear in this regard as to remove the inference reasonably flowing therefrom and to take the inquiry out of the field and function of the jury. We are of the opinion that the question of whether or not an injury was reasonably to be anticipated from such negligence was a jury question and that it was properly submitted to them.

4. It is also contended that if the belt is to be considered a defective one and that its breaking was the proximate cause of the plaintiff's injuries, then, under the facts and circumstances shown, the plaintiff assumed the risk and was guilty of contributory negligence in attempting to put grease into the cups while the machine was in operation. This claim is predicated on the grounds that the plaintiff was an experienced operator of this machine, had full opportunity to know the condition of the belt and the dangers incident to its breaking, and that he had no occasion to put grease in the cup during the hours the engine and drive shaft with the attachments and belts were in motion. Though there is testimony that this service was commonly performed before starting the engine in the morning and during the noon hour, yet it is a matter of inference as to whether or not it was necessary and proper to put grease into these cups during the hours the machinery was in operation. Nor can it be said, as matter of law, that the plaintiff knew or should have known of the defective condition of the belt. Indeed, the evidence of witnesses experienced in such matters presents serious conflicts as to the external evidence of its defective condition. The undisputed inferences from the whole evidence on these questions is not so clear that we can say as matter of law that the plaintiff's conduct, *per se,* establishes that he was negligent or that he assumed the risk.

In connection with the fifth question the court instructed the jury to the effect that if the plaintiff "ought, in the exercise of ordinary care, to have known and appreciated the

danger attending his employment around and near the belt in question, he would be held to have understood and appreciated such danger, and to be thereby guilty of a want of such ordinary care as is meant in this question." This required the jury to determine whether or not the plaintiff was negligent in taking the position he did to put grease in the cup, in view of the condition of the governor belt as embraced in the defendant's requested question pertaining to the assumption of risk, and hence must be held to have been resolved by the jury in accordance with their answer to the question concerning contributory negligence. *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597, 120 N. W. 518.

We find no reversible error in the admission of the evidence of the witness Gether. He showed himself to be sufficiently informed on the subject to qualify as an expert. The fact that his evidence was received as rebuttal did not operate to the defendant's prejudice and does not warrant the conclusion that it substantially affected the defendant's rights.

We find no reversible error in the record.

*By the Court.*—Judgment affirmed.

MARSHALL, J. (*dissenting*). The case, it seems, is governed in favor of appellant by well established rules of law which have either been overlooked, or, for the time, not appreciated. It is a criticism on the administration of the law in this field, not wholly unwarranted, that it goes in such seemingly uncertain and irregular lines as to give rise to an impression that cases turn upon elastic rules of arbitration rather than definite and unbending rules of law.

No one saw the belt strike respondent unless he did. He became insensible the instant the accident occurred and did not regain consciousness for a considerable length of time. The nature of his injury indicates that it could not have been caused, directly, by a blow from the belt, but was caused by the fall and movements of machinery at that moment. He

said the belt struck him, but all circumstances indicate that he could not have known whether it did or not. Moreover, he stated twenty-four days after the accident occurred, when he was in full possession of his faculties and under conditions quite as favorable for remembering, and much more favorable for telling the truth, than at the trial, that he did not know how he got hurt, that he guessed the fly-wheel caught him, but did not know how it occurred. Furthermore, the belt was a small, very slow-running affair, doing but very little work, and such as was not likely to do otherwise than fall upon coming apart. No witness, called as an expert, pretended that such a belt under such circumstances as existed, would, in any reasonable probability, fly outward a considerable distance from the line of tension, upon coming apart, or even fly outward at all. The natural course of the belt, if it flew at all, was at an angle downward, which could not have reached plaintiff's person above the hips. The location of the broken belt and respondent's person after the accident, repels the idea that the belt caused the fall. In such circumstances, how can it be said the evidence warranted a finding to a reasonable certainty that the belt did the mischief? Looking at the matter in the very best light the evidence will bear in respondent's favor, is it not clear that what caused respondent's fall is involved in the obscurity of mere conjecture? Such is clearly the case in my judgment.

In the light of the foregoing, the case, I think, should be ruled by the well established doctrine that unless the plaintiff produces evidence of sufficient probative power to remove, in his favor, the cause of his injury from the realms of conjecture, he cannot recover. *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Clark v. Franklin F. Mut. F. Ins. Co.* 111 Wis. 65, 86 N. W. 549; *Stock v. Kern,* 142 Wis. 219, 125 N. W. 447; *Hart v. Neillsville,* 141 Wis. 3, 15, 123 N. W. 125; *Bakalars v. Continental C. Co.* 141 Wis. 43, 122 N. W. 721.

The cases cited and many more show how elementary the law is and how often it has been applied, that he upon whom the burden of proof rests, in a case like this, must go further than to merely show a possibility of the accident having been caused by actionable fault, or that it may or may not have been so caused—the evidence being as strongly on one side as the other, or merely giving rise to a conjecture that it may have been so caused. Any number of possibilities, as it is said, will not make one probability. A verdict can only rightly rest on the latter. Substitution of mere possibility for probability and supposition for facts and evidence of facts, and so reaching a conclusion to compensate an injured one at the expense of another, is a wrongful taking of the property of the latter and bestowal of it upon another.

There is another rule of law quite as firmly established as the one above adverted to and quite as fatal to the recovery complained of, which arises on the following state of the case: The respondent was a man of age, discretion, and large experience with machinery, particularly with the precise situation. The belt was a very small, simple contrivance. It was so located and used that it was under his observation, necessarily, many times each day,—times when it was idle as well as when it was at work. According to his testimony, he had known for a considerable length of time that it was weak. It had broken once before to his knowledge. Every circumstance bearing on the question shows that respondent had a far better opportunity to know the condition of it than any one representing appellant. In that situation why should not the well known rule apply that where the employee has the same or better facilities than the master for knowing the condition of his working place, tools, or appliances, imperiling his personal safety, he is guilty of fatal contributory negligence in not taking note thereof and acting in his own protection, and of fatal assumption of the risk if he does know of the situation and nevertheless subjects himself to it.

There is a third reason why I think the verdict is without substantial support. If there is a scintilla of evidence to show, appellant ought to have anticipated that the governor belt was liable to break and cause a personal injury to some one, I have not been able to find it. No claim was made that the belt was so located as to be dangerous to employees in the performance of their duties, so it needed guarding under the statute on the subject. No claim was made that the flying of such a belt, even if it parted in operation, was an event reasonably to be apprehended. The only excuse I can see for the jury finding to the contrary is in the implied suggestion by the court that there was credible evidence in respondent's favor on the subject, involved in submitting the matter to the jury. Really, the error on all three points discussed, if error there be, is attributable to the court rather than to the jury. Whether justice or injustice prevails in such cases depends mainly on the court. Notwithstanding the evidence may clearly warrant the direction of a verdict on one side, if the court refuses to grapple with the situation and do so, the jury will naturally take that as a judicial determination that the evidence will support a verdict either way. So it is not good administration to temporarily abdicate judicial duty to direct a verdict with the thought of taking the judgment of the jury and then dealing with the matter from an original standpoint, as is sometimes the case. I venture to say that, had a verdict been directed here on either of the points I have discussed, it would have stood the test of an appeal to this court.